UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **KIM KOOL INC** | **CASE NO. 2:21-CV-00432** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **COBRA TRUCKING L L C ET AL** | **MAGISTRATE JUDGE KAY** |

**OPINION**

A bench trial was held in Lafayette, Louisiana, on August 15, 2022, in this proceeding. At the conclusion of trial, the issue of insurance coverage was taken under advisement by the Court.

The Court hereby enters the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court hereby adopts it as such. To the extent that any conclusions of law constitute a finding of fact, the Court hereby adopts it as such.

**I.     FINDINGS OF FACT**

The plaintiff, Kim Kool ("Kim Kool") Kim Kool designs and builds heat exchangers and cooling packages. It has a customer base in the United States, Canada, Australia, and Thailand. Kim Kool has an office in Sulphur, Louisiana and employs approximately twenty-two employees. The defendant, Cobra Trucking, LLC ("Cobra") is a Texas limited liability company with a principal place of business in Rosenburg, Texas. Cobra is a common carrier which maintains a United States Department of Transportation assigned carrier number.

The relevant facts in this matter are as follows:[1] Kim Kool was designing and building a heat exchanger for Compression Leasing Services ("CLS"), a customer located in Casper, Wyoming; once the heat exchanger was completed, Kim Kool arranged for shipping through Total

---

[1] These facts were testified to at trial by Travis Marburger ("Marburger"), the owner of Kim Kool, and Christine Molnar ("Molnar"), Progressive's Senior Claims Adjuster for Commercial Lines. At trial, Kim Kool introduced exhibits P-2, P-5, P-6-21, P-25, and P-27-33. Progressive introduced Exhibit D-3.

Quality Logistics ("TQL"), a third-party broker that hires truckers to haul items; Kim Kool completed a Customer Application to TQL on August 21, 2019, (P-6)[2] and agreed to payment terms (P-2)[3] with TQL.

CLS required the heat exchanger to be "tarped" during the transportation, which was reflected in the Agreement (P-11)[4] between TQL and the trucking service TQL hired, Cobra. TQL issued a Certificate of Liability Insurance (P-7)[5], which reflected that Cobra had liability insurance and cargo insurance. A Bill of Lading (P-9)[6] reflected the heat exchanger was to be shipped from Kim Kool's facility in Sulphur, Louisiana to CLS's facility in Casper, Wyoming by Cobra. The Bill of Lading contained the following relevant language, "Carrier to be fully responsible and absolutely liable for any loss or damage to the described cargo regardless of the circumstances occasioning such loss."[7]

On December 17, 2019, the heat exchanger at issue was properly packaged for loading onto the delivery truck. TQL had arranged for Cobra to pick up and transport the heat exchanger to Casper, Wyoming. Cobra driver Avery Belcher ("Belcher") arrived at the Kim Kool facility, and the heat exchanger was loaded onto the Cobra flatbed by Kim Kool's overhead crane. Belcher applied chains and secured the heat exchanger. Marburger took photographs of the heat exchanger prior to it leaving the Kim Kool facility.

After the heat exchanger was securely strapped onto the flatbed and chained down, Belcher pulled into the Kim Kool parking lot and began to tarp the heat exchanger in accordance with CLS's instructions. After Belcher began putting on the tarp, Marburger went back into the facility.

---

[2] [Doc. No. 50-3]
[3] [Doc. No. 20-1]
[4] [Doc. No. 50-8]
[5] [Doc. No. 50-4]
[6] [Doc. No. 50-6]
[7] [Id., p.1]

When he came out to inspect the load, Belcher had already left the facility. Kim Kool then sent an invoice to CLS for the total cost of the heat exchanger.[8]

The next day, December 18, 2019, Marburger received a call from a representative of Cobra who told Marburger that the heat exchanger was enroute to Casper, Wyoming, but that the driver made a stop in Houston, Texas in order to adjust and add tarps. The representative gave no indication that there was any damage to the heat exchanger.

On December 19, 2019, Marburger received a call from CLS that the heat exchanger was damaged upon arrival. CLS sent Marburger photographs, which showed all four cooler sections had fin and tube damage beyond repair, and the fan guards had paint damage and would have to be repainted. Marburger prepared an Inspection Report (P-10),[9] which documented the damage to the heat exchanger. Marburger testified that one of the photographs taken by CLS showed that Belcher was the driver who arrived at CLS with the damaged heat exchanger. Additionally, the parties stipulated that Belcher was the driver of Cobra's truck and was employed by Cobra at the time of this incident.

After Marburger became aware of the damage to the heat exchanger, he scrambled to come up with a solution. Due to a cramped schedule for customer orders that Kim Kool was working on, Kim Kool had to work weekends and after hours to complete a rebuild of the heat exchanger for CLS. This required extra wages and overtime wages. Marburger testified that the damage to the heat exchanger was caused by the tarp coming loose and whipping against the heat exchanger. He further testified that the Cobra driver did not maintain or inspect the load to ensure that the tarp was securely fastened.

---

[8] $63,464.04 (P-8), [Doc. No. 50-5]
[9] [Doc. No. 50-7]

Marburger further testified it cost Kim Kool $94,646.08 to rebuild the heat exchanger for CLS under a compressed time schedule (P-14).[10] Marburger explained how each charge was calculated and testified how he used past data to determine the cost of overtime and the cost of a compressed time schedule. This Court ruled orally after the trial that it found Cobra was liable for the actions of its employee, Belcher, in negligently failing to properly monitor the tarp on the heat exchanger and in failing to take actions to make sure the tarp remained secure on the heat exchanger.[11] This Court further found that Cobra was contractually liable to Kim Kool because of the language in the Bill of Lading (P-9).[12]

This Court further found Kim Kool's total damages were $94,646.08.

The only remaining issue for the Court to determine is whether the Progressive policy (P-5)[13] provides coverage to Cobra. As will be addressed further herein, Progressive maintains that its policy had a named driver exclusion provision, which excluded coverage for actions of Belcher (P-5, p 98)[14]. Kim Kool and Cobra maintain other provisions in the Progressive policy, Form MCS-90 (P-5) and Form F-1 (P-5,)[15] resulted in coverage, even though Belcher was an excluded driver.

The remainder of this opinion will address the insurance coverage issues. Kim Kool filed its Post-Trial Memorandum Regarding Insurance Coverage[16] on August 22, 2022. Cobra filed a response[17] on August 29, 2022. Kim Kool filed a reply[18] on September 1, 2022.

---

[10] [Doc. No. 50-11]
[11] [Doc. No. 48]
[12] [Doc. No. 50-6]
[13] [Doc. No. 50-2]
[14] [Id., p. 98]
[15] [Id., p. 12]
[16] [Doc. No. 53]
[17] [Doc. No. 54]
[18] [Doc. No. 55]

## II.     PROGRESSIVE COVERAGE DISPUTE

The Progressive insurance policy (P-5)[19] policy number 00550984-0 was issued to Cobra Trucking, LLC with an effective date of March 28, 2019, to March 28, 2020.  This incident, which occurred between December 17, 2019, and December 19, 2019, was within the effective date of the policy. Molnar, a Progressive Senior Claims Adjuster for Commercial Lines testified that Exhibit (P-5) was a correct copy of the policy, with all policy endorsements.

### A.     Named Driver Exclusion

The Named Driver Exclusion in the Progressive Policy p. 3 and 98 (P-5, Doc. No. 50-2, p 98) reads:

> **Exclusion Of Named Driver And Partial Rejection Of Coverages**
>
> Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.
>
> **We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:
>
> **Warning – Read This Endorsement Carefully**
> This acknowledgement and rejection is applicable to all renewals issued by **us** or any affiliated insurer. However, **we** must provide a notice with each renewal stating: "This policy contains a named driver exclusion."
> **You** agree that none of the insurance coverages afforded by this policy, or any related endorsements, shall apply while an **insured auto** or any other motor vehicle is operated by the following driver(s):
>
> AVERY BELCHER                             DARRICK BREAUX
> WAYLAND M. BREAUX
>
> **You** further agree that this endorsement will also service as a rejection of Uninsured/Underinsured Motorists Coverage and Personal Injury Protection Coverage while an **insurance auto** or any other motor vehicle is operated by the excluded driver or drivers.
>
> **All OTHER TERMS, LIMITS AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**  (Signed on August 01, 2019.)

---

[19] [Doc. No. 50-2]

**Rated and Excluded drivers**

**Important information regarding excluded drivers**

If any drivers are shown as excluded drivers, then you agree that there is no coverage under any parts of this policy, for any accident or loss arising out of the operation of any motor vehicles by the excluded drivers.

Additional information

3.  AVERY BELCHER                                   excluded driver

The parties stipulated at trial that Avery Belcher was driving the Cobra truck when the damage occurred. So, if this provision applies, Progressive has no coverage for the damage. However, Cobra and Kim Kool argue the Form F-1[20] and Form MSC-90[21] overrides the Named Driver Exclusion and results in coverage to Cobra.

**B.    Cargo Endorsement**

Liability coverage in the Progressive policy does not apply to property transported by the insured, designated as cargo[22] unless the policy contains a cargo endorsement. This policy does. The cargo endorsement is set forth on pages 13-23 of the Progressive policy. The cargo endorsement modifies the policy to include liability for damages to cargo. The pertinent provisions state:

> We will pay for the direct physical loss to covered property that you are legally liable to pay as a trucker under a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage. For this coverage to apply, the covered property must, at the time of the loss, be in your exclusive physical custody and control:
>
> 1. while in due course of transit in, on, or attached to an insured auto; or
> 2. during loading or unloading.[23]

---

[20] [Doc. No, 50-2, p. 12]
[21] [Id., pp. 8-9]
[22] [Id., p. 9]
[23] [Id.]

The damage to the heat exchanger occurred in due course of transit while on an insured vehicle while the cargo was in the exclusive custody, care, and control of Cobra.  Additionally, the Court has found that Cobra is responsible both due to the negligence of Belcher and contractually based upon the language in the Bill of Lading.  Therefore, the Cargo Endorsement would cover this incident unless it were excluded by other provisions of the policy.[24]

### C. Limits of Liability

The Progressive policy only requires payment of the least of, (1) Cobra's legal liability for the direct physical loss to the covered property, or (2) the declared value of the covered property shown in the bill of lading. (P-5, p 25). Because the amount of legal liability ($94,646.08) is more than the declared value of the property, ($63,464.04), in the event of coverage, Progressive's liability would be limited to $63,464.04.

### D. Form F

Kim Kool and Cobra argue Form F[25] amends the policy to provide coverage.  However, although Paragraph #1 of the Form F does state that this provision amends the policy, the provision only amends the policy to provide automobile bodily injury and property damage liability. Because Form F does not amend the policy as it relates to cargo liability coverage, Form F does not apply to cargo liability and, therefore, does not result in coverage under the policy.

### E. Form MCS-90

The Form MCS-90 Endorsement[26] amends the policy to assure compliance by the insured as a motor carrier of property in accordance with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

Form MCS-90 does not apply.  The language specifically does not apply to cargo.

---

[24] Loss of use or delay is excluded under the provisions of the Cargo policy [Doc. No. 50-1, p 16].
[25] [Id., p. 6]
[26] [Id., pp. 8-9]

> Such insurance as it is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, **or property transported by the insured, designated as cargo**.

(P-5, Doc. No. 50-2, p 9).

### III. CONCLUSIONS OF LAW

The Named Driver Exclusion in the Progressive policy applies to exclude Progressive for the actions of Avery Belcher, the driver of the Cobra truck and trailer. This provision has been applied to exclude coverage. *Bryant v. United Services Automobile Association*, 881 So.2d 1214 (La. 2004); *Williams v. Watson,* 798 So.2d 55 (La. 2001); and *Filipski v. Imperial Fire & Casualty Ins. Co.*, 25 So.3d 742 (La. 2009). Accordingly, Form F and Form MCS-90 do not apply to provide coverage to Cobra.

The Court finds that Kim Kool is entitled to an award of $94,646.08, to be paid in full by Cobra.

Additionally, the Court finds no coverage under the Progressive policy. Progressive will be dismissed from this proceeding with prejudice.

MONROE, LOUISIANA, this 30th day of January 2023.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

8